STATE OF WEST VIRGINIA *v.* MYLES B. McCLUNG

(No. 8244)

Submitted October 2, 1935. Decided November 26, 1935.

*M. L. Jarrett,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines.* Assistant Attorney General, for the State.

KENNA, JUDGE:

Myles B. McClung was indicted in the Circuit Court of Greenbrier County on the 10th day of April, 1935, charged with the unlawful possession and operation of a moonshine still. The offense was charged to have been committed in December, 1934. On the ground that the statute (Code, 60-1-3), pursuant to which he was accused, was no longer operative at the time of the indictment, McClung demurred to the indictment, filed a plea in abatement, at his trial moved to strike the state's evidence, moved to set aside the verdict of the jury, and moved in arrest of judgment. The trial court overruled his position in each instance, and to its judgment, entered May 14, 1935, sentencing him to one year and six months' confinement in the penitentiary and to pay a fine of $200.00, he prosecutes this writ of error.

The plaintiff in error asserts: (1) that the constitutional amendment adopted November 6, 1934, necessarily repealed Code, 60-1-3, under which the indictment here was made; (2) that no valid indictment can be returned under a criminal statute that has been repealed, in the absence of an express saving clause in the act effecting the repeal or, in any event, a general saving statute such as this state has in Code, 2-2-8; (3) that that statute has no application to the repeal that is

involved here because that repeal was effectuated by the constitutional amendment adopted November 6, 1934, to which the general saving statute could have no application. Those propositions are based largely upon the case of *United States* v. *Chambers*, 291 U. S. 217, 78 L. Ed. 763, 54 S. Ct. 434, 89 A. L. R. 1510, from which plaintiff in error quotes at length.

The state concedes that, without a saving enactment, there can be no prosecution under a criminal statute that has been repealed, but insists that the repeal in this instance was not wrought by the amendment to the constitution, adopted November 6, 1934, but that repeal of Code, 60-1-3, became operative under the act of the Legislature known as the Liquor Control Act, effective March 1, 1935, and that since the repeal was legislative and not constitutional, the saving statute does in fact apply, rendering the indictment and conviction valid. The state contends that since the *Chambers* case was based upon the repeal of the federal prohibition amendment, which withdrew from Congress the very power to prohibit the sale of intoxicating liquor, it has no application to the case before us. It argues that since the Legislature of the state has all powers not clearly denied it by the constitution, the repeal of the state prohibition amendment had no such far-reaching effect as did the repeal of the federal amendment. The *Chambers* case holds the power of Congress to prohibit the sale of intoxicating liquor was removed with the repeal of the federal prohibition amendment and hence there could be no convictions under the federal statute after that time; but the state urges that no such result follows by virtue of the repeal of the state prohibition amendment for the simple reason that the state constitution is not a grant of power but that the Legislature, having all powers not constitutionally denied to it, was not, by the repeal of the state prohibition amendment, shorn of its power to prohibit the sale of intoxicating liquors within the state.

The plaintiff in error answers the position of the state by saying that the repeal of the state prohibition amendment by the amendment adopted November 6, 1934, in fact did divest the Legislature completely of its power to prohibit the sale of intoxicating liquors within the state, and that this result

is brought about by the very language of the last amendment. Plaintiff in error urges that since the amendment, adopted November 6, 1934, did take from the Legislature its right to prohibit the sale of intoxicating liquor within the state, it necessarily repealed all prohibition laws based upon the former amendment, and that although the distinction drawn between the nature of the powers of Congress and the nature of the powers of the Legislature is valid, the distinction nevertheless is not controlling in this case because in each instance, that is, under the federal amendment and under the state amendment, the effect of the amendment was to strike down the legislative power to prohibit and that since that is exactly what was done by the state amendment, adopted November 6, 1934, the reasoning of the *Chambers* case is applicable here.

It will be seen, therefore, that the case narrows itself to the single question: Did the amendment to the constitution of West Virginia, adopted November 6, 1934, take from the Legislature its power to prohibit the sale of intoxicating liquor within the confines of the state?

The general principles surrounding the question involved have been thoroughly dealt with in very enlightening briefs. In fact, there seems to be little divergence of the views of counsel concerning the legal principles that must be looked to in reaching a decision. Their difference seems to be in the application of those principles, and that application will depend largely upon the interpretation to be placed upon the amendment to the constitution, adopted November 6, 1934. Upon this question, the decided cases that we have been able to find and those cited in the briefs of able counsel afford us slight assistance.

We start with the perfectly safe proposition that the Legislature has the power to prohibit the manufacture and sale of intoxicating liquors within the state unless that power is taken from it by the constitution. But the plaintiff in error urges that, by the language of the constitutional amendment, adopted November 6, 1934, this very thing is done. The language of that amendment is as follows: ''Section 46: The legislature shall by appropriate legislation regulate the manufacture and sale of intoxicating liquors within the limits of

this state, and any law authorizing the sale of such liquors shall forbid and penalize the consumption and the sale thereof for consumption in a saloon or other public place.'' The plaintiff in error urges that the language of this amendment constitutes a mandate to the Legislature to regulate the manufacture and sale of intoxicating liquors within the state, and that such a mandate can not be complied with by the absolute prohibition of the manufacture and sale of intoxicating liquors within the state since the thing to be regulated must be permitted to continue.

There seems to be little doubt but that in a *grant* of powers such as a municipal charter, the power to regulate does not carry with it the power to prohibit entirely. It would seem to follow that the mandate to regulate is not the mandate to prohibit and no one, of course, would urge that the amendment of 1934 should be construed as a *mandate* to *prohibit* the sale of intoxicating liquors within West Virginia. But does the mandate to regulate, as expressed in that amendment and considered with the other provisions thereof, necessarily exclude the power to prohibit? If the mandate to regulate does exclude the power to prohibit, then, plainly, the amendment, in effect, itself authorizes the manufacture and sale of intoxicating liquors within the state subject only to such regulations as the Legislature may prescribe. Yet the very language of the amendment itself: '' * * * and any law authorizing the sale of such liquors * * *,'' shows that the Legislature is looked to to authorize the sale of intoxicating liquors, and by necessary inference means that the amendment itself contains no such authorization, and that sale of intoxicating liquors cannot be permitted within the confines of the state unless and until the Legislature authorizes it. The language last quoted would therefore seem to repel the implication that the mandate to regulate takes away the power to prohibit, for by withholding its authorization, the Legislature could reach the same result as it would by express prohibition.

The considerations stated above lead us to conclude that there is at least some ambiguity in the language of the constitutional amendment, adopted November 6, 1934. It is certainly not consistent to suppose that, without the power to

prohibit, the Legislature could still be looked to to authorize the manufacture and sale of intoxicating liquors throughout the state. If it can not prohibit, it would certainly not be necessary for it to authorize, and the power to either grant or withhold authorization could only exist side by side with the power to prohibit, but could not exist in the absence of that power. It is a well settled general principle that any constitutional limitation upon the legislative power must appear by either express language or by clear and necessary implication. It is not to be inferred. *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770, 24 L. R. A. 343; *State Road Commission* v. *Kanawha County Court,* 112 W. Va. 98, 163 S. E. 815.

In the amendment under consideration we have the implication that in order to regulate the sale of intoxicating liquor, the sale thereof must be permitted. We have at the same time the equally strong implication that if the Legislature must authorize that sale in order to make it lawful, the Legislature may withhold that authorization and thus prohibit. It would seem therefore that there is no expressed nor necessarily implied withdrawal of the legislative power to prohibit the manufacture and sale of intoxicating liquor.

The foregoing considerations seem to us to justify the holding that the Legislature has still the power to prohibit.

We, therefore, conclude that the constitutional amendment, adopted November 6, 1934, did not divest the Legislature of West Virginia of its power to prohibit the manufacture and sale of intoxicating liquor throughout the state. That being so, the provisions of Code, 60-1-3, were not repealed by the constitutional amendment, but where repealed by the provisions of the Liquor Control Act. Since the repeal was legislative and not constitutional, the provisions of Code, 2-2-8, render valid the indictment and conviction of the accused under the former statute.

The remaining point raised is that the accused should have been accorded the right, at his election, to be sentenced under either the present or the former statute. The record does not disclose that the accused raised this question before sentence, and, while it may be conceded that, upon proper application,

it would have been error to refuse the privilege, we find no reversible error in the failure of the court *ex mero motu* to bring the matter to the attention of the accused.

For the foregoing reasons, the judgment of the Circuit Court of Greenbrier County is affirmed.

*Affirmed.*